COMMONWEALTH of Pennsylvania, Appellant,

v.

Nathan J. PROSEK, Appellee.

Superior Court of Pennsylvania.

Submitted Sept. 30, 1996.
Filed Sept. 17, 1997.

Mark S. Smith, Assistant District Attorney, Bellefonte, for Commonwealth, appellant.

Joseph L. Amendola, State College, for appellee.

Before CIRILLO, President Judge Emeritus, and POPOVICH and SCHILLER, JJ.

POPOVICH, Judge:

This is an appeal by the Commonwealth from the suppression court's order dated January 29, 1996, granting Prosek's motion to suppress statements made by him and evidence seized by the State College

Police Department. We reverse and remand for a trial.[1]

▮ Initially, we note that when reviewing the Commonwealth's appeal from the decision of the suppression court, "we must consider only the evidence of the ... appellee's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. Baer,* 439 Pa.Super. 437, 654 A.2d 1058, 1058 (1994) (citation omitted). "When the evidence supports the suppression court's findings of fact, we may reverse only when the legal conclusions drawn from those facts are erroneous." *Commonwealth v. Elliot,* 416 Pa.Super. 499, 611 A.2d 727, 728 (1992) (citation omitted). After a careful review of the record, we are satisfied that the suppression court's factual findings are supported by the record. However, we are compelled to note several important omissions from the suppression court's summary of the salient facts.

On August 28, 1995, at approximately 12:45 a.m., Officer William C. Muse of the State College Police Department was in full uniform and operating a marked patrol vehicle when he observed two unoccupied vehicles in the parking area of Orchard Park located in State College, Pennsylvania. According to the State College Borough Ordinance, no one was permitted in the park after sunset. This rule was posted at the various entrances to the park. Believing that the occupants of the vehicle were in the park in violation of the ordinance, Officer Muse exited his patrol car and entered the park on foot. As he proceeded through an area of trees, he observed five males sitting in an open grassy area approximately twenty feet from his location. The officer then illuminated the five males with his flashlight and instructed them to approach. After the males approached him, Officer Muse requested that they each take a seat on the ground. The males all complied with the officer's request. At some

point during this event, Officer Muse radioed for assistance.

Officer Michael McDannel responded to Officer Muse's request for assistance. The two officers then requested and examined the males' identification. Officer Muse also checked the area for signs of illegal activity. Particularly, the officer searched for evidence of drugs or alcohol consumption. After finding no evidence of illegal activity, Officer Muse returned the identification cards to the males, instructed them that he was not going to cite them for violating the borough's ordinance and indicated that they were free to leave the area. As Officer Muse was handing Prosek his identification card, he recognized him as a newly-initiated brother into the fraternity where Officer Muse was the chapter advisor. Moreover, while Prosek was being questioned by Officer McDannel, Officer Muse heard Prosek announce that he was academically suspended from the Pennsylvania State University. After handing Prosek his identification card, Officer Muse asked Prosek if he could speak to him. Prosek agreed and the two conversed for approximately two minutes about Prosek's grades, suspension and possible readmission into the university. Officer Muse then asked Prosek what he was doing in the park and whether he was smoking marijuana. Prosek responded that he was smoking marijuana. The officer asked Prosek if he had a pipe. Prosek stated that he did and then handed the pipe to Officer Muse. Officer Muse inspected the bowl of the pipe and found evidence of marijuana. Based upon Prosek's admission and the seized pipe, the officer announced that he was going to search all of the males. Officer Muse then lifted Charles Lechian's shirt and observed a clear plastic baggie containing marijuana in his waistband.[2] No *Miranda*[3] warnings were given to Prosek or to any of the other males by either Officer Muse or Officer McDannel.

---

1. The Commonwealth has certified that the suppression order substantially handicaps or effectively terminates its prosecution of this case. This permits appellate review of the suppression order. *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

2. The suppression court granted Lechian's motion to suppress the baggie of marijuana. On appeal, the Commonwealth does not challenge this order.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On October 17, 1995, Prosek was charged with possession of drug paraphernalia. On December 14, 1995, he filed a motion to suppress his statements and the pipe which was seized by Officer Muse. Following a hearing, the suppression court entered an order granting Prosek's motion to suppress. The Commonwealth's timely appeal followed.

██ The Commonwealth's first contention is that the suppression court erred in suppressing the statements made by Prosek to Officer Muse since Prosek was not in custody when he was questioned by the officer. Since he was not in custody, the Commonwealth argues, Miranda rights never attached to him. We agree.

██ "Before an individual is subjected to custodial interrogation, he must make a knowing and intelligent waiver of his privilege against self-incrimination and right to counsel after adequate warning as to those rights." *Commonwealth v. Medley*, 531 Pa. 279, 612 A.2d 430, 433 (1992) (citing *Miranda, supra* ). Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action is restricted by the interrogation. *Commonwealth v. Ellis*, 700 A.2d 948 (Pa.Super. 1997); *Commonwealth v. Zogby*, 455 Pa.Super. 621, 689 A.2d 280, 282 (1997). The police officer's subjective intent does not govern the determination but rather the reasonable belief of the individual being interrogated controls. *Ellis, supra; Zogby, supra.*

Applying the aforementioned standard, we must conclude that Prosek was not in custody when he confessed to Officer Muse that he and his friends were smoking marijuana in Orchard Park. It is undisputed that the conversation between Prosek and Officer Muse did not occur until *after* Officer Muse had identified all of the males, returned their identification cards to them, announced that he was not going to cite any of them for violating the borough ordinance and explicitly announced that they were all free to leave the area. It is further undisputed that Officer Muse then approached Prosek, asked him if he recognized him as his fraternity's chap-

ter advisor and asked him if he could speak to him for a moment. As Prosek announced that he was willing to speak to Officer Muse, the other males stood up and began to walk away. After approximately two minutes of conversing about Prosek's grades, Officer Muse questioned Prosek about his reasons for being in the park after sunset. Prosek then confessed that he and his friends were smoking marijuana in the park. From these facts, it is clear that Officer Muse sought Prosek's permission before speaking with him and that Prosek voluntarily submitted himself to police questioning. *Ellis, supra.* It is also clear that the questioning of Prosek was brief, that he was not searched, that Officer Muse did not show, threaten or use force, and that Prosek was not transported to another location against his will. *Zogby, supra.* Accordingly, we find that Prosek was not deprived of his freedom in any significant way nor was he placed in a situation in which he could believe reasonably that his freedom of action or movement was restricted by the officer's questioning. *Commonwealth v. Fento*, 363 Pa.Super. 488, 526 A.2d 784 (1987) (trooper's questioning of driver was not "custodial interrogation" since questioning only lasted five minutes, trooper informed driver he was free to leave and driver's movements were not restrained); *Commonwealth v. Zimmerman*, 351 Pa.Super. 5, 504 A.2d 1329 (1986) (defendant was not in custody when he was questioned by police since he was never physically deprived of his freedom, he was not subjected to a search of his person and his family members were present during much of the questioning). We find that *Miranda* rights did not attach to Prosek since his responses were not the product of custodial interrogation, and, therefore, that his statements should not have been suppressed.

██ The Commonwealth's second contention is that the suppression court erred in suppressing the pipe seized by Officer Muse. Specifically, the Commonwealth argues that Prosek voluntarily relinquished the pipe. We agree.

There is no question that abandoned property may be obtained by police and employed by the prosecution for evidentiary purposes, provided that the abandon-

ment was not induced by illegal police action. As this Court stated in *Commonwealth v. Williams*, 269 Pa.Super. 544, 410 A.2d 835 (1979), the issue is not abandonment in the strict property-right sense, but whether the defendant voluntarily discarded, left behind or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it.

*Commonwealth v. Slyman*, 334 Pa.Super. 415, 483 A.2d 519, 532 (1984) (citations omitted). In considering whether the abandoned or relinquished property is admissible, our supreme court has held that "initial illegality taints the seizure of the evidence ... [because] in such a situation it cannot be said that there was a 'voluntary abandonment or relinquishment' of the evidence....No improper or unlawful act can be committed by the officers prior to the evidence being abandoned [or relinquished]." *Commonwealth v. Shoatz*, 469 Pa. 545, 366 A.2d 1216, 1220 (1976) (citations omitted). *See Commonwealth v. Houston*, 456 Pa.Super. 105, 689 A.2d 935 (1997).

Here, it is undisputed that Officer Muse's initial detention of Prosek, who was in the park in violation of the Borough Ordinance, was proper. At issue is whether Officer Muse was permitted to ask Prosek numerous "follow-up questions" after he indicated that Prosek was free to leave and whether the pipe was relinquished voluntarily as a result of the questions. Pursuant to *Commonwealth v. Hoak*, 700 A.2d 1263 (Pa.Super.1997) (*en banc*), we find that the officer's actions were lawful.[4]

■ In *Hoak*, we found that where an officer informs a defendant that he is "free to leave" and then engages in follow-up questioning, the encounter is not an investigative detention as long as the defendant's consent is given voluntarily and knowingly. The crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not

at liberty to ignore the police presence and go about his business. *Hoak, supra.* We specifically found that it is not constitutionally impermissible *per se* for a police officer to ask questions of, or seek cooperation from, a citizen detained pursuant to a lawful stop. *Hoak, supra.*

An objective review of the totality of the circumstances in this case shows that prior to Prosek handing the pipe to Officer Muse, Prosek had been informed that he was free to leave the area. Prosek then voluntarily engaged in a conversation with Officer Muse and voluntarily confessed that he had been using marijuana. He then handed a marijuana pipe to the officer. It is clear that when Prosek handed the pipe to the officer, Prosek was not seized illegally. *Hoak, supra.* Rather, taking into account all of the circumstances surrounding the encounter, it is clear that the police conduct would not have communicated to a reasonable person that he was not free to leave. *Hoak, supra.* As in *Hoak*, there was no suggestion that after the officer informed Prosek that he was free to leave the officer blocked him or spoke in a threatening tone. Indeed, the officer gratuitously decided not to issue a citation for violating the park ordinance, an act connoting friendliness, not menace, and the officer relinquished Prosek's identification card. *Hoak, supra.* Also, the officer did not touch Prosek in any way, display a weapon or demand that he do anything. By the time Prosek handed the pipe to the officer, the only show of authority was the officer's uniform. *Id.* Absent some coercive conduct by police, a request for cooperation does not automatically convert an undeniably permissible encounter into an illegal seizure. *Hoak, supra.* Accordingly, we find that Prosek voluntarily relinquished the pipe and that it should not have been suppressed.

For all of the foregoing reasons, we find that Prosek's statements and the pipe were admissible. Accordingly, we reverse the lower court's suppression order and remand for a trial.

---

4. Although the decision in *Hoak* addressed whether a defendant's consent to search was given voluntarily, we find the rules enunciated therein to be applicable to this case where the defendant relinquished the evidence.

Reversed; remanded; jurisdiction relinquished.

SCHILLER, J., concurs in the result.