COMMONWEALTH of Pennsylvania, Appellee,

v.

Phillip Gail MARTIN, Jr., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 11, 1997.
Filed Dec. 8, 1997.

Daniel W. Davis, Mercer, for appellant.

David A. Ristvey, Assistant District Attorney, Mercer, for the Commonwealth, appellee.

Before POPOVICH, SAYLOR and OLSZEWSKI, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Mercer County following appellant's conviction on the charges of possession of a controlled substance and possession of drug paraphernalia. Herein, appellant contends that the lower court erred in failing to suppress illegal narcotics and a marijuana pipe found in his possession after he was seized and searched by police pursuant to an anonymous tip. We reverse.

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may re-

verse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, 178–179 (1992). We find that the suppression court's factual findings are supported by the record and are as follows.

On October 4, 1995, at approximately 3:30 p.m., a 911 dispatcher contacted a Sharon police officer and informed him that an unidentified caller had reported that Phillip Martin was selling marijuana and Percocet at the Capital Café. The officer relayed this information to Detective Raymond Greene. Detective Greene, who knew Martin and was aware that he had "a drug problem," immediately proceeded to the Capital Café. He was accompanied by two officers, both of whom were in uniform. Upon arrival, the uniformed officers remained outside the café. Detective Greene, who was not in uniform, entered the café in search of Martin. Inside, the detective observed four or five patrons, none of whom was Martin. The detective then questioned a barmaid and learned that Martin was using the restroom. After Martin exited the restroom, Detective Greene approached him, addressed him as "Phil," asked if he could speak with him and asked him "to step outside." Martin said, "Okay." He then walked out of the café and into an adjacent public parking lot. Once outside, Martin and the detective were joined by the two uniformed officers. Detective Greene then explained the reason for the officers' "visit." Specifically, he informed Martin that the department had received a tip that he was selling narcotics at the Capital Café. Martin responded that he did not use or sell illegal narcotics. The detective then asked Martin if he would mind emptying his pock-

ets. Martin walked over to the police cruiser and placed the contents of his pockets on the cruiser's hood. Detective Greene then approached the cruiser, inspected the contents of Martin's pockets and discovered a pipe containing marijuana residue. Martin was arrested and searched by one of the uniformed officers. The search revealed a baggie of marijuana, part of a marijuana cigarette and a baggie containing Percocet. Martin was then transported to the police station and later charged with possession of a controlled substance and possession of drug paraphernalia.

Martin filed a pre-trial motion to suppress, which was denied by the suppression court. Subsequently, he was tried, convicted and sentenced on all charges. This timely appeal followed.

Appellant contends that the suppression court improperly denied his motion to suppress since (1) he did not voluntarily exit the café with Detective Greene, (2) he was seized illegally in the parking lot when he was questioned by Detective Greene, (3) he did not voluntarily empty his pockets and (4) the police did not have probable cause to arrest or search him.

■ As we undertake consideration of appellant's initial claim, we are mindful that not every encounter between a citizen and the police is so intrusive as to trigger the protections provided by the Pennsylvania and United States Constitutions.[1] *In the Interest of Jermaine,* 399 Pa.Super. 503, 582 A.2d 1058 (1990).

This Court has differentiated between a 'mere encounter' [and] an 'investigative detention'. A mere encounter [or request for

---

1. In the lower court, appellant argued that the search and seizure at issue violated the United States and the Pennsylvania Constitutions. However, "appellant has failed to indicate [on appeal] whether his seizure was in violation of the Fourth Amendment to the United States Constitution, Article I, Section 8 of the Pennsylvania Constitution, or both Constitutions. For the sake of judicial economy, we will analyze this case under both Constitutions." *Commonwealth v. Wright,* 448 Pa.Super. 621, 672 A.2d 826, 828 n. 4 (1996).

We note that the protections of individual privacy against unreasonable governmental searches and seizures under the Pennsylvania Constitution are more expansive than those afforded under the United States Constitution. *Commonwealth v. Parker,* 422 Pa.Super. 393, 619 A.2d 735 (1993). The United States Supreme Court's interpretations of Fourth Amendment guarantees do not bind this Court in reaching conclusions regarding the protections afforded under Article I, Section 8 of the Pennsylvania Constitution. *Id.* However, as will be discussed *infra,* we conclude that under both the state and federal constitutional provisions, the search and seizure in this case were unconstitutional.

information] need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. An investigative detention must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest .[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct could have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter.

*Commonwealth v. Vasquez,* 703 A.2d 25, 30–31 (Pa.Super.1997) (citations and quotations omitted).

■ We find that appellant was not seized by Detective Greene when he initially exited the café. Prior to leaving the café, appellant was not questioned extensively by Detective Greene. Rather, the detective merely approached appellant, indicated that he would like to speak with him and asked him if he would "step outside." There is no indication that appellant was told that he was required to leave the café. Rather, the detective simply asked for his cooperation. *Florida v. Rodriguez,* 469 U.S. 1, 105 S.Ct. 308, 311, 83 L.Ed.2d 165 (1984) (per curiam) [2] ("The initial contact between the officers and respondent, where they simply asked if he would step aside and talk with them, was clearly [a] consensual encounter ."). Moreover, Detective Greene approached and spoke to appellant in a non-threatening manner. There were neither threats nor any show of force. There was no evidence of any attempts at coercion or intimidation by the detective. Accordingly, we find that appellant left the café voluntarily, and, therefore, that he was not "seized." *See Sibron v. State of New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

■ Next, we must determine whether the questioning of appellant in the parking lot escalated an otherwise permissible police encounter into an investigatory detention requiring reasonable suspicion. When appellant exited the café, he was immediately confronted by two additional officers, both of whom were in uniform. Detective Greene then informed appellant that the police came to the café because they received a tip that he was selling drugs. N.T. 2/2/96 p. 12. As in *Commonwealth v. Wright,* 448 Pa.Super. 621, 672 A.2d 826, 829 (1996), we find that "the combination of the threatening presence of several officers and the indication that appellant was suspected of criminal activity [requires the conclusion that] a reasonable person would believe that he was not free to leave." A statement by a law enforcement official that a person is suspected of illegal activity is persuasive evidence that the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution have been implicated. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (White, J., plurality); [3] *Wright, supra.* We believe that appellant could conclude reasonably that the police suspected him of selling illegal narcotics based on the detective's recitation of the anonymous tip and that he could conclude reasonably that he was not free to leave. Accordingly, we find that appellant was seized by the police when he was questioned in the parking lot. *See Commonwealth v. Lewis,* 535 Pa. 501, 636 A.2d 619 (1994) (holding that appellant was seized where he was confronted by four officers who indicated that they were "working narcotics" and were part of a drug interdiction program); *Jermaine, supra* (indicating that the threatening presence of several officers and unsupported accusations of criminal activity constitute a "seizure").

Having found that appellant was seized when he was detained and questioned by Detective Greene, we must next determine whether "there were specific and articulable facts which, taken together with rational inferences from those facts, reasonably war-

---

2. The rules enunciated in *Rodriguez* were adopted by a majority of the United States Supreme Court in *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

3. The rules enunciated in *Royer* were adopted by a majority of the United States Supreme Court in *Bostick, supra.*

ranted that intrusion." *Wright,* 672 A.2d at 829–830 (citation and quotation omitted). *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Specifically, we must determine whether the anonymous tip provided police with reasonable suspicion to make the investigatory stop.

■■■■ "When, as here, the underlying source of the police department's information is an anonymous telephone call, the courts have recognized that the tip should be treated with particular suspicion." *Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571, 574 (1997). In analyzing an anonymous tip, we must determine whether under the "totality of the circumstances" the informant's tip established the necessary reasonable suspicion that criminal activity was afoot. *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Critical factors to be considered are the informant's veracity, reliability and basis of knowledge. *Id.*

■■■■ Here, the tip provided virtually nothing from which one might conclude that the caller was either honest or his information reliable. The caller provided absolutely no indication of the basis for his information regarding appellant's criminal activities. "Simply put, a tip such as this one, standing alone, would not warrant a man of reasonable caution in the belief that [a stop] was appropriate." *White,* 496 U.S. at 329, 110 S.Ct. at 2416 (quotation omitted). As the Pennsylvania Supreme Court has stated, "the anonymous tip may have been a mere prank call. Equally, it may have been based on no more than the caller's unparticularized hunch." *Jackson,* 698 A.2d at 574.

■■■■ However, this does not mean that an officer may never conduct an investigatory stop on the basis of an anonymous tip. A stop may be proper where the tip is sufficiently corroborated by independent police work giving rise to a reasonable belief that the tip was correct. Rather recently, in

*Jackson, supra,* the Pennsylvania Supreme Court examined an anonymous call where the only information provided was the location of the suspect, his gender and the color of his jacket. The Court held that:

> If the police respond to an anonymous call that a particular person at a specified location is engaged in criminal activity, and upon arriving at the location see a person matching the description but nothing more, they have no certain knowledge except that the caller accurately described someone at a particular location .[T]he fact that a suspect resembles the anonymous caller's description does not corroborate allegations of criminal conduct, for anyone can describe a person who is standing in a particular location at the time of the anonymous call. Something more is needed to corroborate the caller's allegation of criminal conduct.

*Jackson,* 698 A.2d at 574 (quoting *Commonwealth v. Hawkins,* 547 Pa. 652, 692 A.2d 1068, 1070 (1997) (Flaherty, J., plurality)).

■■■■ The tip in this case was similar to the tip in *Jackson,* except that the name of the suspect rather than his description was provided to the police. While the fact that the caller knew appellant's name indicates a greater degree of familiarity than if he only described appellant's appearance, we find that it is not sufficient detail, even when corroborated, to satisfy the reasonable-suspicion standard. Knowing a person's name is not the sort of fact restricted to "those in the defendant's inner circle of friends." *Commonwealth v. Wilson,* 424 Pa.Super. 110, 622 A.2d 293, 296 (1993). It is information which can easily be obtained and is known by general acquaintances of the accused. *See Wilson, supra.* Moreover, as in *Jackson,* the caller did not predict any future behavior by appellant. Because of the general nature of the tip, the only detail the police were able to corroborate was the fact that appellant was at a particular location.[4] The caller's allega-

---

4. In his dissent, our esteemed colleague argues that there was a greater degree of corroboration of the tip in this case than in *Jackson, supra,* and, therefore, that Detective Greene had reasonable suspicion to stop appellant. Specifically, it is argued that since appellant was found at the described location possessing the described

drugs, the tip was corroborated. This argument was rejected in *Commonwealth v. Hawkins,* 547 Pa. 652, 692 A.2d 1068 (1997) (Flaherty, J., plurality), whose analysis was adopted in *Jackson, supra.* The dissent also argues that Detective Greene had prior knowledge regarding appellant which gave credibility to the tip. Specifically,

tion, without more, did not constitute reasonable grounds for the police to suspect that appellant was engaged in criminal activity.[5]

 Remaining is the question of whether the evidence seized from appellant may, nevertheless, be introduced into evidence against him on the grounds that he voluntarily emptied his pockets and was searched incident to a lawful arrest. In *Commonwealth v. Prosek,* 700 A.2d 1305 (Pa.Super.1997), we held that when the causative factor in the relinquishment of evidence is an unconstitutional search and seizure, the contraband must be suppressed. *See Jackson, supra.* Thus, while we accept as true the suppression court's finding that appellant relinquished evidence when he emptied his pockets, we find that the evidence should have been suppressed as the fruit of an illegal search. The same is true of the evidence seized after appellant was arrested.[6]

Reversed and remanded for proceedings consistent with this decision. Jurisdiction relinquished.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting:

While the expression of the majority view provides a persuasive analysis and sound rationale, I am obliged to differ and respectfully dissent. I feel that the detective had reasonable suspicion to make the investigatory stop.

Certainly, in cases of anonymous tips, the court must analyze the "totality of the cir-

cumstances" in determining whether there was reasonable suspicion that criminal activity was afoot. *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The majority relies on the case of *Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571 (Pa.1997), where our Supreme Court held that there was no reasonable suspicion when the *only* corroboration of the anonymous tip was that the described person was at the particular location. The majority analogizes the instant case to *Jackson* by indicating that "the only detail the police were able to corroborate was the fact that appellant was at a particular location" in the instant case.

To the contrary, in the instant case there is *more* significant corroboration that, given the totality of the circumstances, gives rise to reasonable suspicion that criminal activity is afoot. The anonymous tip gave the name of the defendant, his location, and that he was selling marijuana and Percocet. Defendant was indeed found at the described location. Further, the suppression court found that the detective knew the defendant and had knowledge that the defendant was taking prescription drugs for a motorcycle accident. The fact that defendant was known to be taking medication for an accident along with the anonymous tip that defendant was selling Percocet, a prescription drug often given for pain relief, gave significant credibility to the anonymous tip. The naming of the particular prescription drug that was being sold, a drug that coincided with the detective's knowledge of the defendant's medical condition, is beyond mere chance and indicates the

---

the dissent indicates that the detective knew that appellant used drugs in the past and that he was prescribed medication as a result of a motorcycle accident. However, we find that the Commonwealth failed to establish the reliability of this information. During the suppression hearing, Detective Greene stated that appellant did not provide him with this information. Rather, he testified that he discovered this information from "people on the street." N.T. 2/2/96 p. 29. Detective Greene also specifically testified that he did not know the name or type of medication prescribed to appellant. N.T. 2/2/96 p. 29. In any event, even if we were to find the detective's prior knowledge to be reliable, it would be insufficient justification for stopping appellant, even in connection with the otherwise uncorroborated tip.

5. We note that "[u]pon receiving unverified information that a certain person is engaged in illegal activity, the police may always observe the suspect and conduct their own investigation. If police surveillance produces a reasonable suspicion of criminal conduct, the suspect may, of course, be briefly stopped and questioned ." *Hawkins,* 692 A.2d at 1071. Here, there was no police surveillance and no contention that appellant was acting suspiciously when the police arrived at the café. *See Commonwealth v. Anderson,* 481 Pa. 292, 392 A.2d 1298 (1978).

6. In light of our discussion *supra,* we need not discuss appellant's remaining contentions.

degree of familiarity needed to satisfy the reasonable suspicion standard.

Because there was reasonable suspicion to permit the investigatory stop in the parking lot, evidence gained when defendant voluntarily emptied his pockets and recovered subject to the search following a lawful arrest was properly admissible.