**COMMONWEALTH of Pennsylvania,
Appellee**

**v.**

**Richard MOORE, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 20, 2010.
Filed Dec. 17, 2010.

program such as Gun Court. However, that issue is not presently before us.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BENDER, FREEDBERG and COLVILLE *, JJ.

OPINION BY BENDER, J.:

Richard Moore, Appellant, appeals from the judgment of sentence of three to six years' incarceration, imposed after he was convicted of possession with intent to deliver (PWID) a controlled substance. On appeal, Moore contends that the trial court erred in denying his pre-trial motion to suppress evidence. We affirm.

The trial court set forth the facts of this case as follows:

On May 14, 2008, while on routine patrol with his partner, Officer Kert Wilson drove to an abandoned house located at 4925 Olive Street. Officer Wilson made it a point of checking that particular property every night since it was known to him as a house that had been used for narcotic sales. On that date, at approximately 3:00 in the morning, Officer Wilson observed [Moore] standing inside the doorway of this abandoned property. Officer Wilson and his partner approached [Moore] and asked him to step out, which he did. As Officer Wilson was speaking with [Moore], he could see that there was a large lump in his mouth that he was constantly moving around. The [o]fficer testified that it was immediately clear to him there was narcotic packaging in [Moore's] mouth. He described it as a clear baggie with small objects inside which the officer had seen hundreds of times before as narcotics packaging. After [Moore] refused to spit it out, the [o]fficers seized the pack-

age from his mouth and placed [Moore] under arrest.

Trial Court Opinion (T.C.O.), 3/4/10, at 1–2.

After Moore's non-jury trial on June 26, 2009, he was convicted of PWID and subsequently sentenced to a mandatory minimum term of three to six years' imprisonment. Moore filed a timely notice of appeal, as well as a timely concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Herein, he raises the following issue for our review: "Did not the trial court err when it denied [Moore's] motion to suppress where the police saw [Moore] simply standing in the doorway of a vacant house and stopped [him] without reasonable suspicion in violation of the Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution?" Moore's Brief at 3.

■ We begin by stating our standard of review of the trial court's denial of a suppression motion:

In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and reverse only when the court draws erroneous conclusions from those facts.

*Commonwealth v. Hoopes*, 722 A.2d 172, 174–75 (Pa.Super.1998) (citation omitted).

Instantly, Moore argues that he was subject to an "investigative detention," and, thus, was "seized," when "Officer Wilson ordered [him] to step out of the doorway and come to him." Moore's Brief at 9. Moore further claims that the investigative detention was unlawful as Officer Wilson did not have reasonable suspicion that criminal activity was occurring. The Com-

* Retired Senior Judge Assigned to the Superior Court.

monwealth, on the other hand, contends that Officer Wilson's interaction with Moore was a "mere encounter" not requiring any level of suspicion on the officer's part. Instead, the Commonwealth avers that Moore was not seized until Officer Wilson saw the drugs in his mouth and ordered Moore to spit them out.

We begin by explaining the difference between a "mere encounter" and an "investigative detention." In *Commonwealth v. Martin*, 705 A.2d 887 (Pa.Super.1997), we stated:

> A mere encounter [or request for information] need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. An investigative detention must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. [I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct could have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter.

*Id.* at 890–91 (citation omitted).

In support of its claim that Officer Wilson did not seize Moore until seeing the drugs in his mouth, the Commonwealth relies on *Martin* and *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161 (2001). In *Martin*, police received an anonymous tip at 3:30 p.m. that Martin was selling narcotics at the Capital Café. *Martin*, 705 A.2d at 890. The tip was relayed to Detective Raymond Greene who knew Martin. *Id.* Detective Greene proceeded to the Café where he approached Martin, asked him if he could speak with him, and then asked him "to step outside." *Id.* Martin responded, "Okay," and exited the Café. *Id.*

On appeal, we concluded that Detective Greene's conduct did not amount to an investigative detention of Martin. We reasoned that Detective Greene did not approach Martin in a threatening manner, did not coerce or intimidate him, and never told Martin that he was required to leave the Café. *Id.* Instead, the detective merely approached Martin, asked him if he would "step outside," and indicated that he would like to talk to Martin. *Id.* Consequently, we concluded that Martin left the café voluntarily and, therefore, was not "seized" by the police.

Likewise, *In the Interest of D.M.*, our Supreme Court also found that D.M. had not been seized by police. In that case, an officer received a call at approximately 6:00 p.m. reporting a man with a gun at an intersection in Philadelphia. *In the Interest of D.M.*, 781 A.2d at 1162. Upon arriving at the scene, the officer observed D.M., who matched the description of the armed man provided by the caller. *Id.* The officer "exited his vehicle and told [D.M.] to come over." *Id.* Our Supreme Court concluded that this interaction between the officer and D.M. "did not need to be justified by any level of suspicion" because, "at the time the police initially approached D.M. it was unclear whether the police intended to do anything other than talk to him." *Id.*

■ Comparing this case to *Martin* and *In the Interest of D.M.*, we conclude that Moore was not "seized" when Officer Wilson initially approached him. First, as in *In the Interest of D.M.*, there was no indication by Officer Wilson that he wanted to do anything other than talk to Moore. Additionally, contrary to Moore's claim that Officer Wilson "ordered" him to

step out of the house, Officer Wilson testified that he approached Moore and *asked* him to move out of the vacant building so that he could "ask [Moore] why he was in there." N.T. Suppression Hearing, 6/26/09, at 7, 10. Similarly as in *Martin,* there is no evidence that Officer Wilson acted in a threatening, coercive, or intimidating manner, or that he told Moore that he was required to step out of the house. Instead, the record reveals that Moore voluntarily exited the vacant structure and began speaking with Officer Wilson, at which point the officer saw the drugs in Moore's mouth. *Id.* at 7. This evidence supports a conclusion that the interaction between Moore and Officer Wilson was a mere encounter, not a seizure.

Furthermore, the facts of this case are even more indicative of a mere encounter than those in *Martin* and *In the Interest of D.M.* Unlike those cases, here, Officer Wilson came upon Moore in an odd, if not dangerous, situation—*i.e.* Moore standing alone in a vacant, dilapidated, and decaying building at three o'clock in the morning.[1] Officer Wilson acted pursuant to his duty to protect and serve the community in approaching Moore to find out what he was doing there. *See Commonwealth v. Conte,* 931 A.2d 690, 693 (Pa.Super.2007) (stating "our expectation as a society is that a police officer's duty to serve and protect the community he or she patrols extends beyond the enforcement of the Crimes Code ... and includes helping citizens evidently in distress."). Thus, based upon the totality of the circumstances, a reasonable person in Moore's situation would have interpreted Officer Wilson's

conduct as an act of official assistance, not an investigative detention. *See Commonwealth v. Collins,* 950 A.2d 1041, 1047–48 (Pa.Super.2008) (finding that a reasonable person would interpret an officer stopping to check on a vehicle parked after dark, at a scenic location most commonly used in the daylight, as an act of official assistance, not an investigative detention).

In sum, Officer Wilson's interaction with Moore was a mere encounter and, therefore, did not need to be justified by any level of suspicion. As Moore does not take issue with the seizure or search of his person after Officer Wilson saw the drugs in his mouth, we conclude that the trial court did not err in denying his motion to suppress.

Judgment of sentence affirmed.

---

1. Officer Wilson described the condition of the house as follows:

It was once a rowhouse, a set of rowhouses that run the entire block. That particular house for whatever reason has been destroyed. The front door is no longer there. The windows are kind of shelves. Some of them still have boards over them, but most of it is just a crumbling shell. The inside of the house you could see right into it, and the stairs are no longer there, and its just piles of junk.

N.T. Suppression Hearing, 6/26/09, at 12.