J-S67026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LOUIS TOOLE, | : | |
| | : | |
| Appellant | : | No. 2763 EDA 2016 |

Appeal from the Judgment of Sentence August 17, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0004407-2015

BEFORE:   GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY MUSMANNO, J.:            **FILED DECEMBER 29, 2017**

Louis Toole ("Toole") appeals from the judgment of sentence imposed following his convictions of aggravated assault, possession of a firearm prohibited, firearms not to be carried without a license, possession of an instrument of crime, simple assault, recklessly endangering another person, and resisting arrest.  ***See*** 18 Pa.C.S.A. §§ 2702(a); 6105(a)(1); 6106(a)(1); 907(a); 2701(a); 2705; 5104.  We affirm.

The trial court set forth the relevant underlying facts as follows:

On April 12, 2015, at about 5:45 p.m., Philadelphia Police Officer Matthew Lally [("Officer Lally")] was on routine patrol in the 3500 block of North 21st Street when he observed a car turn onto the 2000 block of Tioga Street, a one[-]way street with parking on both sides of the street, where its operator partially pulled into a parking spot that left the rear of the vehicle sticking partly into the highway on 21st Street to a degree that required cars traveling on Tioga Street to turn to go around it, in violation of the law.  Officer Lally observed [Toole] exit the vehicle and go up onto the porch of a residence on Tioga Street.  Officer Lally circled the block[,] and when he returned to Tioga Street the car

_____

* Former Justice specially assigned to the Superior Court.

[Toole] was driving was still parked in the same spot with its tail still partially sticking into 21st Street.

Upon seeing the car in the same location, Officer Lally exited his patrol car and began walking up to [Toole], who was sitting on the porch of the residence the officer [had] earlier observed him proceed onto. As Officer Lally climbed the stairs leading onto the porch[, Toole] stood up and the officer asked him why he had parked the car in the manner in which he did[,] and whose car it was. [Toole], who appeared to be talking on his cell phone[,] responded that it was not his house, that he was waiting to pick up a friend, and that he had a "good" license[,] at which time the officer asked him for identification. A female then walked out of the residence and [Toole] asked her to tell Officer Lally that she knew him so [that] Officer Lally would leave him alone. The female, however, said in so many words that she did not know him.

After the female indicated that she did not know [Toole], Officer Lally asked [Toole] his name. When [Toole] went into his right pants' pocket[,] Officer Lally observed the handle of a handgun sticking out of the waistband of [Toole's] pants. He then asked [Toole] if, in fact, it was a firearm[,] at which point [Toole] pushed past Officer Lally to flee. Officer Lally grabbed [Toole] by the collar and as the officer attempted to handcuff [Toole], [Toole] threw a punch at the officer that missed …. The two men began to wrestle and they tumbled down some steps onto the pavement into a parked car[,] where [Toole] attempted to retrieve the gun in his waistband as the two men continued to wrestle. When [Toole] pulled the gun from his waistband, Officer Lally got off of [Toole's] back, drew his weapon, and ordered [Toole] to drop the handgun. [Toole] immediately threw his gun under a car and stood up when Officer Lally again attempted to handcuff [Toole], who continued to struggle[,] and prevented the officer from doing so.

During the affray with [Toole], Officer Lally called for back-up officers[,] who arrived approximately five to seven minutes after Officer Lally called for them. [Toole] was then placed in custody. Police recovered the firearm [Toole] discarded, which testing showed was operable[,] and two containers from [Toole] that contained alleged PCP.

In addition thereto, evidence was presented indicating that [Toole] did not have a license to possess a firearm and had a prior conviction that made him ineligible to possess a firearm.

Trial Court Opinion, 2/14/17, at 2-4 (citations and footnote omitted).

Toole was charged with numerous crimes. Toole filed a Motion to Suppress the evidence. Following a hearing, the trial court denied the Motion to Suppress. Toole waived his right to a jury trial, and the case proceeded to a bench trial before the Honorable Jeffrey P. Minehart. Judge Minehart found Toole guilty of the above-mentioned crimes. On August 17, 2016, Judge Minehart sentenced Toole to an aggregate sentence of four to eight years in prison, to be followed by ten years' probation.

Toole filed a timely Notice of Appeal, and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Toole raises the following question for our review: "Did the [trial] court commit error by denying [Toole's] Motion to Suppress evidence obtained by a seizure performed without reasonable suspicion?" Brief for Appellant at 2 (some capitalization omitted).

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Arnold*, 932 A.2d 143, 145 (Pa. Super. 2007) (citation omitted).

Toole contends that the trial court erred in denying his Motion to Suppress because the evidence was obtained as the result of an unlawful investigative detention. Brief for Appellant at 6. Toole argues that Officer Lally's actions of approaching Toole in front of a residence, asking another individual whether she knew Toole, and asking for Toole's identification demonstrate that Toole was subject to an investigative detention. *Id.* at 9. Toole asserts that Officer Lally lacked reasonable suspicion that Toole was engaging in criminal activity prior to approaching Toole. *Id.* at 9-10; *see also id.* at 9 (claiming that Officer Lally was merely searching for evidence of criminal activity when he approached Toole). Toole further asserts that his mere presence in front of a residence did not evince a criminal motive. *Id.* at 10. Toole claims that because the detention was not supported by reasonable suspicion, all of the evidence collected following the interaction, including the firearm, should be suppressed. *Id.*

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). There are three categories of interactions between police and a citizen:

The first of these is a "mere encounter" (or request for information)[,] which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted).

In determining whether an interaction should be considered a mere encounter or an investigative detention, the focus of our inquiry is on whether a seizure of the person has occurred. Within this context, our courts employ the following objective standard to discern whether a person has been seized: [w]hether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave. Thus, a seizure does not occur simply because a police officer approaches an individual and asks a few questions.

*Commonwealth v. Cooper*, 994 A.2d 589, 592 (Pa. Super. 2010) (citations, brackets, quotation marks, and ellipses omitted).[1]

On April 12, 2015, Officer Lally, in full uniform and while on routine patrol in the 3500 block of 21st Street in Philadelphia, observed a vehicle, driven by Toole, make a quick left turn onto West Tioga Street and park his

---

[1] This Court has set forth a non-exclusive list of factors to determine whether a seizure has occurred, including "the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked." *Commonwealth v. Collins*, 950 A.2d 1041, 1047 n.6 (Pa. Super. 2008) (*en banc*).

vehicle. N.T., 4/19/16, at 5-6. The front of the vehicle was blocking the sidewalk entrance, and the back of the vehicle was sticking out onto 21st Street. *Id.* at 6, 18; *see also id.* at 7-8 (wherein Officer Lally noted that cars travelling on 21st Street had to go around the parked vehicle). Officer Lally observed Toole exit the vehicle, walk up to a house and sit on a porch. *Id.* at 6, 8, 17, 19, 21. After going around the block, Officer Lally parked his vehicle and approached Toole, who was talking on his phone. *Id.* at 6, 8-9; *see also id.* at 8, 10 (wherein Officer Lally indicated that did not turn on his lights or siren at any point). Officer Lally asked Toole why he parked his vehicle in that manner. *Id.* at 9, 25. Toole replied that he was waiting for a friend. *Id.* at 9, 25, 27, 28. During the interaction, a female exited the residence, and Toole asked her to tell Officer Lally that she knew Toole. *Id.* at 9, 29. The female stated that she did not know Toole. *Id.* At that point, Officer Lally asked Toole for identification. *Id.* at 9, 11-13, 30; *see also id.* at 10 (stating that Officer Lally did not draw his firearm during this encounter). As Toole reached into his right pocket to retrieve his wallet, Officer Lally observed a firearm sticking out of the front of his waistband. *See id.* Officer Lally then asked Toole if he had a firearm in his waist, after which Toole pushed past Officer Lally. *Id.* at 13, 36-37. As Officer Lally grabbed Toole and attempted to handcuff him, both fell down the stairs. *Id.* at 13, 37, 38. After wrestling with Toole, Officer Lally drew his firearm and

ordered Toole to drop his firearm. *Id.* at 14, 16, 38-41. Toole threw his firearm under a parked vehicle. *Id.* at 14, 42.

Upon our review of the record, we conclude that Officer Lally's initial encounter with Toole was a "mere encounter." Here, after observing Toole park his vehicle such that the rear of the vehicle was sticking out into the intersection,[2] and get out of the vehicle, Officer Lally parked his vehicle and approached Toole. Officer Lally merely asked Toole why he had parked his vehicle in such a manner. *See Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012) (noting that initial encounter where officer asked to talk to the appellant was a mere encounter); *see also Commonwealth v. Blair*, 860 A.2d 567, 573 (Pa. Super. 2004) (stating that initial encounter was a "mere encounter" when the officer, responding to a report of a domestic dispute and aware that domestic disputes are volatile, approached a vehicle parked directly in front of the address in question and spoke to the occupants). There is no evidence that Officer Lally blocked or restricted Toole's movement. *See Downey*, 39 A.3d at 405. Indeed, Toole continued to talk on the phone while Officer Lally asked him questions. *See*

---

[2] The trial court notes that Toole violated Motor Vehicle Code sections 3351, Stopping Standing and parking outside business and residence districts, and 3354(b), Additional parking regulations – one-way highways, by illegally parking his vehicle. *See* Trial Court Opinion, 2/14/17, at 5-6. The evidence of record however does not demonstrate that Toole violated either of these specific statutes. Based upon the evidence, Toole violated section 3353(a)(1)(iii), which prohibits the parking of a vehicle within an intersection.

*Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa. Super. 2005) (stating that "[a] mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond."). Officer Lally's subsequent request for identification from Toole, without any other action, does not demonstrate that the encounter escalated into an investigative detention. ***See Commonwealth v. Au***, 42 A.3d 1002, 1008-09 (Pa. 2012) (holding that the officer's request for identification after approaching a parked vehicle did not, by itself, transform the encounter into an investigatory detention where officer did not "activate the emergency lights on his vehicle; position his vehicle so as to block the car that [a]ppellee was seated in from exiting the parking lot; brandish his weapon; make an intimidating movement or overwhelming show of force; make a threat or a command; or speak in an authoritative tone.") (internal citations omitted); ***see also Commonwealth v. Lyles***, 97 A.3d 298, 303 (Pa. 2014) (noting that "a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification.").

Moreover, the fact that Officer Lally, upon seeing the handle of a firearm, asked Toole whether he possessed a firearm did not constitute a seizure. ***See Commonwealth v. Coleman***, 19 A.3d 1111, 1116 (Pa. Super. 2011) (noting that an officer's interaction with the defendant where

officer asked defendant whether he had a gun was a mere encounter); **accord Commonwealth v. Young**, 162 A.3d 524, 529 (Pa. Super. 2017). Based upon Toole's ongoing violation of the Motor Vehicle Code,[3] and Officer Lally's actions, we conclude that the initial interaction was a mere encounter that did not require any level of suspicion. **See Commonwealth v. Moore**, 11 A.3d 538, 540-41 (Pa. Super. 2010) (holding that a police officer's request to move out of a doorway constituted a mere encounter, as the officer did not act in a threatening or coercive manner); **see also Commonwealth v. Newsome**, 170 A.3d 1151, 1155-56 (Pa. Super. 2017) (concluding that an officer's initial interaction with defendant was a mere encounter where the officer was responding to an anonymous call that individuals were passing around a firearm, arrived at the scene in full uniform and a marked police vehicle, did not brandish a weapon, asked to speak to the defendant, who initially refused, and asked defendant to stop two or three times).

Moreover, when Officer Lally grabbed and attempted to handcuff Toole, as Toole tried to leave the scene, the interaction escalated to a custodial detention. Nevertheless, Officer Lally had probable cause to arrest Toole based upon his observation of a firearm in Philadelphia. **See**

---

[3] We further acknowledge that because there was an ongoing violation of the Motor Vehicle Code based upon Toole's parking of his vehicle, Officer Lally had the right to conduct an investigative detention of Toole. **See, e.g., Commonwealth v. Salter**, 121 A.3d 987, 993 (Pa. Super. 2015)

***Commonwealth v. Taggart***, 997 A.2d 1189, 1196 (Pa. Super. 2010) (noting that "an officer's observation of an individual carrying a handgun on public streets in the city of Philadelphia gives rise to probable cause for an arrest under [section] 6108."); ***see also Commonwealth v. Canning***, 587 A.2d 330, 332 (Pa. Super. 1991) (noting that "[o]nce probable cause is established, it does not dissipate simply because the suspect is not charged with the particular crime which led to the finding of probable cause.").[4] Thus, based upon the foregoing, the trial court properly denied Toole's Motion to Suppress. ***See Newsome***, 170 A.3d at 1156 (concluding that defendant's motion to suppress should have been denied where initial encounter was a mere encounter and the officer properly arrested defendant after observing defendant reach into his waistband, remove a firearm, and discard it).

Judgment of sentence affirmed.

---

[4] While Toole does not raise an argument regarding the forced abandonment of the firearm on appeal, the trial court noted in its Opinion that such a claim would be without merit. ***See*** Trial Court Opinion, 2/14/17, at 10-11. Specifically, the trial court pointed out that Officer Lally's actions were legal and Toole voluntarily discarded the firearm. ***See id.*** (citing ***Commonwealth v. Byrd***, 987 A.2d 786, 791 (Pa. Super. 2009)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/29/17</u>