J-A06035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHNNY RICO SERRANO | : | |
| | : | |
| Appellant | : | No. 963 MDA 2018 |

Appeal from the Judgment of Sentence June 8, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000621-2016

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:               **FILED APRIL 05, 2019**

Johnny Rico Serrano (Serrano) appeals from his order of judgment of sentence entered in the Court of Common Pleas of Berks County (trial court) and imposed after he was convicted of possession of a weapon without a license.  Serrano's sole ground on appeal is that the trial court erred in denying his motion to suppress the firearm that police obtained from his person when he was stopped and frisked.  We affirm.

**I.**

Officers Raymond Carter, Daniel Cedeno and Christopher Gaughan testified at the suppression hearing and the trial court relied on their testimony in making its findings of fact, which are summarized here.  At approximately 10:00 p.m. on the date in question, Officer Carter was on patrol near the 800 block of Windsor Street.  He heard six gunshots ring out a few blocks away

_____

*   Retired Senior Judge assigned to the Superior Court.

near the intersection of Ninth and Spring Street. He exited his vehicle and ran to the 900 block of Ninth Street where a white male flagged him down to say that "the guy you are looking for is wearing a red hoody on, over on Spring Street." Trial Court Opinion, filed 02/09/17, at 2.

Officer Carter reported the gunshots over his police radio and conveyed what the unidentified white male had told him. Not long after, Training Officer Jared Abby stopped a male wearing a red hoody near the 900 block of Spring Street. Officer Carter went to that area and searched the suspect but found no weapon. The suspect was released a few minutes after he was stopped.

Meanwhile, as Officer Cedeno was also searching for an armed suspect, an unidentified woman approached on foot to tell him that a man in red who had discharged a weapon was walking west on Spring Street. The woman said that the man in red seemed intoxicated. She declined to identify herself because she did not want to be involved with the investigation. Officer Cedeno testified that he found the woman credible.

Officer Cedeno relayed over police radio to Officer Gaughan what the unidentified woman had said. Although they were returning to the 900 block of North Eighth Street from different locations, they arrived at the same time and saw a man wearing red who appeared to be staggering. It was Serrano, who Officer Gaughan had briefly encountered earlier that evening soon after

the gunshots.[1] The two officers immediately drew their weapons and ordered Serrano not to move.

The two officers frisked Serrano and recovered an unloaded 9 mm handgun. Serrano was arrested and charged with several firearm-related offenses. The case proceeded to a bench trial.

Serrano moved to suppress the firearm on the ground that the search was the tainted fruit of an illegal seizure.[2] At the conclusion of the suppression hearing, the trial court ruled that the police had lawfully detained and frisked Serrano. The trial court acknowledged that "reports from anonymous witnesses are suspect," but reasoned that they were sufficient to justify the detention "because of the corroborating nature of the tips, the specificity of the tips, and the ability of Officer Cedeno to [assess] the credibility of the second tipster." *Id.* at 6.

Serrano was found guilty of carrying a firearm without a license.[3] He was sentenced to a range of three to twenty-three months as well as three

---

[1] Officer Gaughan himself had heard shots ring out that night. Moments later, he seized Serrano but released him to assist Officer Carter in detaining another suspect. Officer Gaughan encountered Serrano for the second time with Officer Carter.

[2] Serrano had also moved to suppress his post-arrest statements to police, which the Commonwealth conceded.

[3] *See* 18 Pa.C.S. § 6106(a)(2).

years of probation. He timely appealed, arguing that the two anonymous tips were insufficient to give the police a legal basis to detain him because the tips' allegation of illegality was not corroborated prior to the detention.[4]

## II.

The United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. Amendment IV; *see also* Pennsylvania Const. Art. 1, § 8. The extent of this constitutional protection depends on the nature of the police-citizen interaction at hand.

Under state and federal law, such an interaction falls within one of three categories: a "mere encounter," an "investigative detention," or a "custodial detention," which is equivalent to an arrest. *See Commonwealth v. Ellis*, 662 A.2d 1043, 1047-48 (Pa. 1995). These categories determine the burden of proof as to the legality of the police intrusion and the admissibility of evidence obtained as a result of it. The greater the intrusion, the greater the burden on law enforcement to prove that it was constitutionally valid. If the

---

[4] The standard of review and applicable law are critical to the disposition of this appeal. First, if "the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous." *Commonwealth v. Freeman*, 150 A.3d 32, 34-35 (Pa. Super. 2016). In deferring to those factual findings and reviewing the conclusions of the law, an appellate court may not consider any other evidence. *Id.* In this case, the suppression court's findings of fact are not in dispute.

police action does not pass constitutional muster, then the resulting evidence may be subject to exclusion at trial.

In a mere encounter, the use of force is limited such that a person would not reasonably believe they are being detained. An investigative detention or a "***Terry*** stop" occurs when police use enough physical force or a show of authority for a person to reasonably believe that they are not free to go. ***See Commonwealth v. Barber***, 889 A.2d 587, 592 (Pa. Super. 2005) (citing ***Terry v. Ohio***, 392 U.S. 1, 88 (1968)). However, the use of force in an investigatory detention falls short of the coercive conditions of an arrest. ***See Barber***, 889 A.2d at 592.

Police need no level of suspicion to justify a mere encounter; police need "reasonable suspicion" of criminal activity to justify an investigative detention; and police need "probable cause" to justify an arrest. ***See Commonwealth v. Korn***, 139 A.3d 249, 257–58 (Pa. Super. 2016). Courts must consider the legality of police-citizen contact on a case-by-case basis, taking all relevant circumstances into account. ***Commonwealth v. By***, 812 A.2d 1250, 1254 (Pa. Super. 2002).

Here, the parties agree that this case concerns an investigative detention of Serrano.[5] The issue is whether the police had reasonable suspicion when they detained and frisked him.

Reasonable suspicion for an investigative detention must be supported by "specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion." **Barber**, 889 A.2d at 593. Reasonable suspicion may be drawn from the "totality of the circumstances." **Commonwealth v. Wiley**, 858 A.2d 1191, 1194 (Pa. Super. 2004).

"To justify a frisk incident to an investigatory [detention], the police need to point to specific and articulable facts indicating the person they intend to frisk may be armed and dangerous[.]" **Commonwealth v. Myers**, 728 A.2d 960, 963 (Pa. Super. 1999) (quoting **Commonwealth v. Patterson**, 591 A.2d 1075, 1078 (Pa. 1991)) (emphasis omitted). "[P]olice officers need not personally observe the illegal or suspicious conduct [to justify a detention or frisk], but may rely upon the information of third parties, including 'tips' from citizens." **Commonwealth v. Lohr**, 715 A.2d 459, 461 (Pa. Super. 1998).

_____

[5] In Serrano's 1925(b) Statement of Matters Complained of on Appeal, he averred that he was subjected to a custodial arrest, stating in the alternative that an investigative detention took place. However, in his brief, Serrano only asserted the latter claim. **See Commonwealth v. Manigault**, 462 A.2d 239, 240 (Pa. 1983) (holding that issues which are not argued or briefed on appeal are abandoned and waived even if raised at trial).

- 6 -

**III.**

Serrano contends that the police lacked reasonable suspicion for failure to corroborate the tipsters' allegation of illegality.[6] However, just because both witnesses are unidentified does not mean that they are unreliable.

Information given to police in person by an unidentified individual may be considered trustworthy because it is possible to observe the demeanor of such witnesses and assess their "veracity, reliability and basis of knowledge." *See Commonwealth v. Martin,* 705 A. 2d 887, 892 (Pa. Super. 1997). Also,

---

[6] In support, Serrano relies on *Florida v. J.L.,* 529 U.S. 266, 272 (2000), where the United States Supreme Court held that an anonymous telephone call may only give police reasonable suspicion to detain a suspect if the tip is "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." This means that when police receive an anonymous tip over the phone, they may not detain a suspect based only on his appearance and location, even where the tip warns that the suspect is armed. The police must further develop reasonable suspicion by observing an indication of crime. In addition to *J.L.*, Serrano relies on two Pennsylvania cases in support of his claim that he was illegally detained – *Commonwealth v. Jackson*, 698 A.2d 571 (Pa. 1997), and *Commonwealth v. Hawkins*, 692 A.2d 1068 (Pa. 1997). As in *J.L.*, the courts held in those two cases that the phone calls of "anonymous tipsters" did not give police reasonable suspicion because the police had only confirmed the suspects' location and physical appearance. *See Jackson*, 698 A.2d at 575-76; *Hawkins*, 692 A.2d at 1070; *see also Commonwealth v. Mackey*, 177 A.3d 221 (Pa. Super. 2017).

Prior to detaining the suspects, the police in *J.L.*, **Jackson** and *Hawkins* did not observe any indication that the person was armed as the anonymous tipsters alleged. Unlike in the present situation, the tips were communicated over the phone rather than face-to-face. Such tips are far less reliable than those given at the scene of an alleged crime, even where the on-scene witness is not identified by name. *See Commonwealth v. Ransom*, 103 A.3d 73, 78-79 (Pa. Super. 2014) (distinguishing *Jackson* and *Hawkins* on that basis); *Williams*, 980 A.2d 671-72 (distinguishing anonymous phone calls from police reports given to police on-scene by unidentified witnesses).

information from an unidentified witness at the scene of a crime may be reliable because "a person who knowingly gives false information to any law enforcement officer with intent to implicate another" may be held criminally liable. *Williams*, 980 A.2d 671-72; 18 Pa.C.S. § 4906 (imposing criminal penalty for making a false crime report); *see also Adams v. Williams*, 407 U.S. 143 (1972) (officer justified in detaining defendant when informed on the street that he was carrying narcotics and a gun and the informant was subject to prosecution for making a false report); *United States v. Valentine*, 232 F.3d 350, 354-57 (3d. Cir. 2000) (noting that an in-person tip based on first-hand account is more reliable than an anonymous telephone call).

In this case, the police were within earshot of gunfire and were already investigating the shooting so they did not have to rely on a tip to confirm that a crime had almost certainly occurred. When the two witnesses approached the police officers, each gave independent and consistent descriptions of the shooter as a man who was wearing red and walking down a nearby street. One of the two witnesses, the unidentified white male, flagged down Officer Carter to inform him that the suspect was wearing a red hoody and walking near Spring Street. The other witness, the unidentified woman, told Officer Cedeno that the man in red was intoxicated and this witness was found to be credible. *See Commonwealth v. Davis*, 102 A. 3d 996, 1000 (Pa. Super. 2014) ("In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and

experience"). Within minutes of the gunshots and the two witnesses' tips, the police located Serrano in nearly the exact place where the witnesses claimed he would be. *See Commonwealth v. Zhahir*, 751 A. 2d 1153, 1157 (Pa. 2000) (it is significant when an anonymous tip predicts future behavior and police can independently corroborate it).

Serrano was wearing red and he seemed to be staggering as if intoxicated. He was walking within a few blocks of the area where two officers had heard the gunshots. Officer Gaughan had even detained Serrano earlier that evening in the immediate aftermath of the shooting before releasing him to back up officers who were with another suspect. This prior contact established that Serrano was in the area at the time a weapon was discharged. *See Commonwealth v. Kearney*, 601 A.2d 346, 347-348 (Pa. Super. 1992) (holding that the "reasonable suspicion . . . standard is met if the police officer's reasonable and articulable belief that criminal activity was afoot is linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped.") (citations and quotations omitted).

Additionally, the police were already investigating the shooting when two witnesses approached them in the street. There was little possibility of a false report of a crime or that the two witnesses had any nefarious aim when reporting to the officers on scene. This made the two witnesses' information all the more reliable, giving the officers reasonable suspicion to stop and frisk Serrano once he was spotted.

In sum, the circumstances of this case gave the police reasonable suspicion that Serrano was the person who had discharged his weapon. The police legally detained him and the resulting frisk did not run afoul of the constitutional prohibition against unreasonable searches and seizures because the police justifiably suspected that Serrano had just committed a firearm-related offense. *See Commonwealth v. Walls*, 53 A.3d 889, 894 (Pa. Super. 2012) (holding that the police had reasonable suspicion to believe the defendant was involved in criminal activity because of a number of factors, including his "proximity to the location described in the flash, and [the defendant's] matching the description of the suspect"); *Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010) ("[a]n anonymous tip, corroborated by independent police investigation, may exhibit sufficient indicia of reliability to supply reasonable suspicion for an investigatory stop"); *Williams*, 980 A.2d 671-72 (affirming denial of suppression motion where police detained defendant based on multiple tips from unidentified bystanders at the scene of an offense in progress); *Barber*, 889 A.2d at 593-94.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/05/2019

- 10 -