**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Khalif WALLS, Appellee.**

Superior Court of Pennsylvania.

Submitted July 17, 2012.

Filed Sept. 13, 2012.

Denied November 28, 2012.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Dennis I. Turner, Philadelphia, for appellee.

BEFORE: MUSMANNO, MUNDY, and FITZGERALD,* JJ.

Opinion by MUNDY, J:

The Commonwealth appeals from the August 3, 2010 order granting the motion to suppress filed by Appellee, Khalif Walls.

---

* Former Justice specially assigned to the Superior Court.

After careful review, we reverse and remand for further proceedings consistent with this opinion.

The relevant facts and procedural history, as gleaned from the certified record, are as follows. On December 8, 2008, at approximately 1:05 p.m., Officer Booker Messer received a flash over police radio based on an anonymous tip. N.T., 8/3/10, at 4, 9. The flash reported a black male located around the intersection of 13th Street and Allegheny Avenue wearing a black coat, black jeans, and carrying a gun on his right hip, possibly a .38 caliber. *Id.* at 4, 8. Officer Messer traveled northbound on 13th Street towards Allegheny Avenue. *Id.* at 4. About one-half of a block away from that intersection, Officer Messer observed a black male wearing a black coat and black jeans walking on the sidewalk, whom Officer Messer identified at the suppression hearing as Appellee. *Id.* at 4–5. Officer Messer did not observe a gun on Appellee's person when he first saw him.

Q: What happened when you observed [Appellee]?

A: I stopped my vehicle. [Appellee] stopped walking. I identified him by description. He immediately ran southbound.

Q: What did you do at that time?

A: I had to go around the block. I immediately called radio that the male that matched the flash was running southbound on 13th towards Clearfield.

Q: Did you ever speak to [Appellee] when your cruiser pulled up next to him?

A: No.

Q: Did you have any interaction with [Appellee] other than make eye contact with him?

A: No.

*Id.* at 5.

Officer Patrick Sitek also heard the flash over the police radio and was travelling in his marked police vehicle westbound on Allegheny Avenue and pulled up to the corner of 13th Street and Allegheny Avenue. *Id.* at 14. Officer Sitek observed several police cars turning off Allegheny Avenue and heading north on 13th Street. *Id.* Officer Sitek heard over the radio that the suspect was running towards Clearfield Street. *Id.* Upon looking southbound on 13th Street towards Clearfield Street, Officer Sitek saw Appellee. *Id.* Officer Sitek drove his vehicle the wrong way down 13th Street towards Clearfield, chasing after Appellee. *Id.* During this chase, Officer Sitek saw Appellee discard an object near 3131 13th Street. *Id.* Appellee ran into an alleyway on Clearfield Street. *Id.* Officer Sitek and his partner got out of their vehicle and followed Appellee into the alleyway.[1] Appellee fell while running in the alleyway and surrendered to Officer Sitek and his partner. *Id.* Officer Sitek's partner placed Appellee in handcuffs while Officer Sitek returned to the area around 3131 13th Street where he had seen Appellee discard an object. *Id.* at 14–15. Officer Sitek recovered a black and silver Lama handgun, loaded with eight rounds of live ammunition. *Id.* at 15.

Appellee was subsequently charged with three violations of the Uniform Firearms Act.[2] On May 19, 2009, Appellee filed an omnibus pretrial motion to suppress the handgun, alleging that the police lacked the reasonable suspicion required to seize and detain Appellee. On August 3, 2010,

---

1. Officer Sitek's partner is not identified by name in the certified record.

2. 18 Pa.C.S.A. §§ 6105, 6106, and 6108.

the suppression court conducted a hearing at which Officers Messer and Sitek testified. As the suppression court correctly noted, "neither officer testified that [the subject] area was a 'high crime' area." Suppression Court Opinion, 5/23/11, at 8. At the conclusion of the hearing, the suppression court granted Appellee's motion finding that the police did not possess reasonable suspicion that Appellee was involved in criminal activity and as a result, Appellee's discarding of the handgun was coerced and must be suppressed. *See id.* at 8–9; *see also N.T.,* 8/3/10, at 29. On August 31, 2010, the Commonwealth filed a timely notice of appeal in which it averred, pursuant to Pa.R.A.P. 311(d), that the trial court's order would terminate or substantially handicap its prosecution.[3]

On appeal, the Commonwealth presents one issue for our review.

> Did the [suppression] court err in suppressing [Appellee]'s gun on the ground that police lacked reasonable suspicion to pursue him, where an officer responding to a report of a man with a gun saw [Appellee], who matched the description, at the specified location and [Appellee] fled when approached by the officer?

Commonwealth's Brief at 3.

■■■ When the Commonwealth appeals from a trial court's grant of a motion to suppress, our standard of review is clear.

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Where the [appellee] pre-

vailed in the suppression court, we may consider only the evidence of the [appellee] and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Peterson,* 17 A.3d 935, 937 (Pa.Super.2011) (internal quotation marks and citations omitted), appeal denied, 611 Pa. 681, 29 A.3d 372 (2011).

■■■ The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures. "To secure the right of citizens to be free from such [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Pratt,* 930 A.2d 561, 563 (Pa.Super.2007) (citation omitted), *appeal denied,* 596 Pa. 743, 946 A.2d 686 (2008). We have long recognized that there are three levels of intrusion involved in interactions between members of the public and the police. The first is a mere encounter, which requires no level of suspicion at all.

---

**3.** On August 31, 2010, the Commonwealth filed a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), al-

though the suppression court did not order it to do so. The suppression court filed its Rule 1925(a) opinion on May 23, 2011.

*Commonwealth v. Daniels,* 999 A.2d 590, 596 (Pa.Super.2010). The second level is an investigative detention, which must be supported by reasonable suspicion. *Id.* at 596–597. Finally, the third level is an arrest or custodial detention, which must be supported by probable cause. *Id.* at 597.

■■ In the instant matter, we agree with the suppression court that Officer Messer's encounter with Appellee rose to the level of an investigative detention. *See Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769, 776 (1996) (holding police pursuit of a suspect is a seizure within the meaning of Article I, Section 8 of the Pennsylvania Constitution, even though it is not under the Fourth Amendment of the Federal Constitution). Accordingly, this case hinges on whether Officer Messer had the required reasonable suspicion to detain Appellee. *See Daniels, supra* at 596–597.

> The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot.

*Commonwealth v. Gutierrez,* 36 A.3d 1104, 1107–1108 (Pa.Super.2012). The Common-

wealth avers that the police possessed the necessary reasonable suspicion to stop Appellee. Commonwealth's Brief at 7. The Commonwealth relies heavily on *In re D.M.,* 566 Pa. 445, 781 A.2d 1161 (2001) (*D.M. II* ) because the facts are strikingly similar. Commonwealth's Brief at 8. In *D.M. II,* Officer Chris Frazier received an anonymous call of a man with a gun at 28th Street and Cecil B. Moore Avenue in Philadelphia. *D.M. II, supra* at 1162. The tip described the man as "a black male, wearing a white t-shirt, blue jeans and white sneakers." *Id.* Officer Frazier arrived at the scene and saw the appellant who matched the description given by the anonymous tip. *Id.* Officer Frazier exited his vehicle and told the appellant to "come over." *Id.* However, the appellant took off running instead. *Id.* Backup arrived and the appellant found himself cornered between two police cars. *Id.* Officer Frazier ordered the appellant to put has hands on the hood of the car in front of him and proceeded to pat the appellant down for officer safety. *Id.* Officer Frazier recovered a .32 caliber handgun that fell out of the appellant's pant leg. *Id.* Our Supreme Court concluded that Officer Frazier had the reasonable suspicion necessary to stop the appellant.[4]

> In the instant case, the police received an anonymous telephone call reporting that appellant was on a specific corner with a gun. The caller also described

---

4. Our Supreme Court originally concluded that Officer Frazier lacked reasonable suspicion to stop the appellant, holding that because Officer Frazier's suspicions were not aroused when he first spotted the appellant "the 'additional' factor of flight is not relevant to the determination of reasonable suspicion." *In re D.M.,* 560 Pa. 166, 743 A.2d 422, 426 (1999) *(D.M. I), vacated,* 529 U.S. 1126, 120 S.Ct. 2003, 146 L.Ed.2d 953 (2000). However, on May 22, 2000, the United States Supreme Court vacated that opinion and remanded the case for further consideration in

light of *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). *Id.* In *Wardlow,* the Supreme Court held that unprovoked flight in a high-crime area is relevant to a *Terry* analysis. *Wardlow, supra* at 124–126, 120 S.Ct. 673. The Court concluded, "[h]eadlong flight—**wherever it occurs**—is the consummate act of evasion...." *Id.* at 124, 120 S.Ct. 673 (emphasis added). As the Commonwealth points out, neither opinion in *D.M.* made any reference to a high-crime area. *See* Commonwealth's Brief at 8.

what appellant was wearing. This information standing alone was insufficient to support a finding of reasonable suspicion. However, as the police officer approached appellant, he turned and fled the scene. As the Court indicated in *Wardlow,* flight is the consummate act of evasion. Thus, appellant's flight coupled with the anonymous caller's information was sufficient to arouse the officer's suspicion that criminal activity was afoot at the time he stopped appellant. *Id.* at 450–451, 781 A.2d 1161 (internal citation omitted).

We find *D.M. II* to be instructive in our resolution of this case. Herein, Officer Messer noted several factors that led him to suspect and stop Appellee. First, Officer Messer first saw Appellee only a half-block away from the location described over police radio. N.T., 8/3/10, at 4. Second, Appellee matched the description of the suspect with regard to gender, race, and clothing. *Id.* at 4, 20. Finally, Appellee fled after seeing Officer Messer before he had the chance to say anything to Appellee. *Id.* at 5. The Commonwealth avers that these circumstances, when added together, amounted to the reasonable suspicion required for Officer Messer to stop Appellee. We agree.

Like in *D.M. II,* Appellee matched the description given over the police radio with respect to his gender, race, and clothing. Additionally, Officer Messer discovered Appellee only a half-block away from the location given over the radio. Furthermore, Appellee fled from Officer Messer before he had an opportunity to say anything to Appellee. We acknowledge that Officer Messer did not observe a gun on Appellee's person when approaching him. However, our Supreme Court has rejected the notion that "the existence of a single fact contradictory to [a] police radio broadcast required an officer to ignore these other incriminating factors." *Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043, 1048 (1995). The fact that Appellee's gun was not on his hip when Officer Messer noticed him does not void Appellee's matching the rest of the flash's description. *See id.* (holding police had reasonable suspicion to detain the appellant and his friend even though the flash described the suspects as white or "Mexican" and the appellant and his companion were African-American).

The suppression court concluded that Appellee matching the suspect's description was not in and of itself enough to raise reasonable suspicion because the flash did not have independent corroboration. N.T., 8/3/10, at 29; Suppression Court Opinion, 5/23/11, at 8. The suppression court further concluded that Appellee did not "specifically match the flash" because Officer Messer did not see a gun on Appellee's person when he first approached him and therefore "could not possibly create a reasonable belief that the tip was correct." *Id.* Finally, the suppression court held that because Appellee did not flee from Officer Messer in a high crime area, "[Appellee]'s flight from the officers cannot support a finding of reasonable suspicion...." Suppression Court Opinion, 5/23/11, at 8. The suppression court cited to *D.M. II* for this proposition. *See id.* However, as noted above, neither opinion in *D.M.* made any reference to the stop taking place in a high crime area. We conclude, consistent with *D.M. II* and *Wardlow,* that unprovoked flight, even when not in a high crime area, combined with Appellee's proximity to the location described in the flash, and Appellee's matching the description of the suspect, does give rise to reasonable suspicion that criminal activity was afoot. We also note that in making a reasonable suspicion determination, the United States Supreme Court has rejected courts' isolated evalua-

tion and rejection of individual factors. *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Such a mode of analysis "departs sharply" from the totality of the circumstances test. *Id.* The Supreme Court's decision in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) "precludes this sort of divide-and-conquer analysis." *Arvizu, supra* at 274, 122 S.Ct. 744.

Based on the foregoing, we conclude that Officer Messer had reasonable suspicion to stop Appellee based on the totality of the circumstances. Officer Messer was justified in pursuing him, and the gun Appellee discarded as a result of said pursuit was admissible. Accordingly, the order granting Appellee's motion to suppress said gun is reversed, and the case is remanded for further proceedings, consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.