J-A12013-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :     IN THE SUPERIOR COURT OF
                                           :                PENNSYLVANIA
              Appellee          :
                                           :
        v.                     :
                                         :
TROY JACKSON,                    :
                                         :
            Appellant        :      No. 158 EDA 2013

Appeal from the Judgment of Sentence Entered December 10, 2012,
In the Court of Common Pleas of Philadelphia County,
Criminal Division, at No. CP-51-CR-0001601-2012.

BEFORE:  SHOGAN, STABILE and PLATT*, JJ.

MEMORANDUM BY SHOGAN, J.:           **FILED SEPTEMBER 17, 2014**

Appellant, Troy Jackson, appeals from the December 10, 2012 judgment of sentence following his conviction on weapons charges at a bench trial.  We affirm.

The trial court summarized the facts of the crime as follows:

[T]he Commonwealth presented the testimony of the arresting officer, Philadelphia Police Officer Darnell Young.  Officer Young testified that he and his partner were patrolling the 12th District of Philadelphia in a marked car on January 20th 2012, when at approximately 7:00 p.m. they received information via radio call about a robbery in progress at point of gun at 52nd Street and Baltimore Street.  The radio call contained flash information, provided by an identified complainant, of a black male wearing a black hat with blue jeans.  Less than one minute after receiving the call, the officers observed defendant at the 5200 block of Broomall Street, which is a street that branches off from where Baltimore Street and Broomall Street intersect on 52nd Street. Defendant was wearing a black hooded sweatshirt, black puffy jacket, blue jeans, and gray sneakers.  Officer Young testified

_____
*Retired Senior Judge assigned to the Superior Court.

that this particular area is one in which there are both robberies as well as gun violence.

Based on his experience and the flash report, Officer Young approached and stopped the defendant. Once stopped, Officer Young conducted a pat down of defendant and felt the butt of a gun on the right side of his waistband. A firearm was then recovered and placed on Property Receipt 3021384.

Trial Court Opinion, 7/12/13, at 2.

Appellant was arrested on January 20, 2012, and charged with various weapons violations. On April 2, 2012, he filed a motion to suppress, which was denied following a hearing on the day of trial. Appellant was found guilty at a bench trial on August 1, 2012, of all three charges: persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets or public property in Philadelphia. On December 10, 2012, the trial court sentenced Appellant to an aggregate term of three to six years of imprisonment followed by three years of reporting probation. Appellant filed a timely notice of appeal on January 8, 2013. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant raises the following single suppression issue for our review:

Did not the trial court err as a matter of law in denying [A]ppellant's motion to suppress the firearm in violation of his state and federal rights to be free from unreasonable searches and seizures where [A]ppellant was stopped and searched without reasonable suspicion based on uncorroborated flash information, was not seen engaging in suspicious or criminal behavior, and did not match the description provided of the suspect?

Appellant's Brief at 3.

In reviewing the denial of a motion to suppress,[1] we must determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Harrell*, 65 A.3d 420, 433 (Pa. Super. 2013) (citation omitted). Where the suppression court finds in favor of the prosecution:

> [o]ur scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Wormley*, 949 A.2d 946, 948 (Pa. Super. 2008) (quoting *Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa. Super. 2002) (*en banc*)). It is a well-settled principle that appellate courts must defer to the credibility determinations of the trial court, which observed the demeanor of the witnesses and heard them testify. *Commonwealth v. Khalifah*, 852 A.2d 1238, 1240 (Pa. Super. 2004).

---

[1] Recently, in *In re L.J.*, 79 A.3d 1073 (Pa. 2013), our Supreme Court prospectively applied a new rule regarding the scope of review in suppression matters, clarifying that an appellate court's scope of review in suppression matters includes the suppression hearing record and not evidence elicited at trial. As the litigation in this case commenced prior to *L.J.*, it has no bearing on the instant case. *Commonwealth v. Hale*, 85 A.3d 570, 574 (Pa. Super. 2014).

Appellant contends that the trial court erred in concluding that Officer Young had reasonable suspicion to stop and frisk Appellant, maintaining that the Commonwealth failed to offer articulable facts to support the reasonable suspicion. Appellant's Brief at 12. We disagree.

There are three distinct levels of interaction between law enforcement and the general public: a mere encounter, which need not be supported by any level of suspicion; an investigative detention, which must be supported by reasonable suspicion; and an arrest or custodial detention, which must be supported by probable cause. **Commonwealth v. Walls**, 53 A.3d 889, 892–893 (Pa. Super. 2012). In the instant case, we agree with the trial court that Officer Young's encounter with Appellant rose to the level of an investigative detention. Accordingly, we must evaluate whether Officer Young had the required reasonable suspicion to detain Appellant.

The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. **Commonwealth v. Holmes**, 14 A.3d 89, 96 (Pa. 2011) (citing **Commonwealth v. Cook**, 735 A.2d 673, 677 (Pa. 1999)). "It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot." **Walls**, 53 A.3d at 893

(citing **Commonwealth v. Gutierrez**, 36 A.3d 1104, 1107–1108 (Pa. Super. 2012)). "In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention." **Commonwealth v. Downey**, 39 A.3d 401, 406 (Pa. Super. 2012) (citing **Commonwealth v. Brown**, 996 A.2d 473, 477 (Pa. 2010)).

The trial court stated the following in support of its conclusion that suppression of the firearm should be denied:

> When looking at the totality of the circumstances, close spatial and temporal proximity of a suspect to the crime scene as well as areas of expected criminal activity are relevant considerations in determining reasonable suspicion. **Com[monwealth] v. Jackson**, 519 A.2d 427, 438 (Pa. Super. 1986); **Com[monwealth] v. Zhahir**, 751 A.2d 1153, 1157 (Pa. 2000). Officer Young testified that the radio call was for 52nd Street and Baltimore Street and that defendant was first observed at the 5200 block of Broomall Street. When questioned regarding the proximity of the two streets to one another, the officer explained that Broomall Street merely branches off from where Baltimore Street and Broomall Street intersect at 52nd Street. From the description provided by Officer Young it is clear that [Appellant] was stopped at a location that was close in proximity to the scene of the crime. Additionally, during Officer Young's testimony[,] he stated that he first observed [Appellant] approximately less than one minute after the radio call. Finally, during an inquiry by the District Attorney about the character of the area where [Appellant] was stopped, Officer Young testified that based on his fifteen years of experience in the 12th District of Philadelphia, it is an area in which both robberies as well as gun violence take place. Based on this information, the spatial and temporal proximity of defendant to the scene of the robbery as well as the character of

the area where he was stopped established grounds for reasonable suspicion to make a lawful ***Terry*** stop.

Trial Court Opinion, 7/12/13, at 6.

Our review of the record confirms the trial court's conclusions and reflects that the police possessed the requisite reasonable suspicion when Appellant was stopped. While patrolling in a high-crime area, Officer Young, who had fifteen years of experience as an officer in the 12th District, received a flash report of a gunpoint robbery **in progress** less than one block away from him. N.T., 8/1/12, 8–11, 14–15. The flash report noted that the victim had been identified by other officers and had provided a physical description of the assailant. ***Id***. at 8. Less than one minute after receiving this report, Officer Young observed Appellant, who matched the physical description of the assailant. ***Id***. at 11–12. The officer asked Appellant to stop and, in light of the nature of the reported crime, frisked him for weapons. ***Id***. at 12. Shortly thereafter, the victim, in the company of police officers, arrived on the scene. ***Id***. at 17. As we stated in ***Commonwealth v. Cruz***, 21 A.3d 1247, 1251 (Pa. Super. 2011):

> First, not only was the complainant known to the police, the complainant was actually in the company of police and surely risked prosecution for false information. [***Commonwealth v.***] ***Altadonna***, [817 A.2d 1145, 1152 (Pa. Super. 2003)]. Second, our cases have also regarded information coming from the actual crime victim as meriting a high degree of reliability. ***In re D.M.***, 556 Pa. at 165, 727 A.2d at 558. Therefore, we find that [the] Officer . . . possessed the requisite reasonable suspicion to justify the stop of [the] appellant.

We reject Appellant's claim that the complainant victim "must be treated as an anonymous source" because Officer Young did not personally interview the victim and did not know the victim's name. Appellant's Brief at 12–14. The potential significance of this fact is that our case law distinguishes between anonymous tips, which are inherently less reliable, and information provided by people known to police, regardless of whether the arresting officer was personally familiar with the tipster. **See**, **e.g.**, **Cruz**; **Commonwealth v. Korenkiewicz**, 743 A.2d 958, 964–965 (Pa. Super. 1999) (*en banc*) (explaining 911 report from identified witness gave officer on the scene reasonable suspicion to stop, even though the officer never spoke directly to the witness). Persons who identify themselves to police are credible because "the known informant, unlike the anonymous one, faces risk of prosecution for filing a false claim should the information be untrue." **Commonwealth v. Kondash**, 808 A.2d 943, 947 (Pa. Super. 2002).

Here, the victim complainant was identified by police, remained in their presence, and consented to be taken to the site of Appellant's detention. Moreover, Officer Young testified that he knew the victim had described being robbed at gunpoint by a man meeting Appellant's description **less than one block away and less than one minute earlier**.

Officer Young also knew that the victim had been identified by fellow officers and was accompanied by them when he was brought to the scene.

Moreover, to the extent Appellant suggests he did not match the description of the robber in the flash report because he did not wear a hat, we concur with the Commonwealth's response. When police received the flash report, they observed Appellant within one minute of the robbery, within one-half block of the robbery. He was the same race as the assailant and wore the same color and type of pants. The only discrepancy was that the robber was described as wearing a black hat, and Appellant had a black hoodie. As the Commonwealth points out, the hat was a small article of clothing that Appellant could have removed and hidden in a coat or pocket. Commonwealth's Brief at 12.

Further, the case law that Appellant cites in support of his claim regarding this minute discrepancy between the flash report and Appellant, involved more permanent variations that could not be altered quickly. **See**, **e.g.**, **Commonwealth v. Hicks**, 253 A.2d 276 (Pa. 1969) (assailant described as having a mustache; the appellant was clean-shaven); **Commonwealth v. Pinney**, 378 A.2d 293, 295 (Pa. 1977) (description included prominent facial mark; the appellant was four inches shorter, thirty pounds lighter, and had no facial marks); **Commonwealth v. Youngblood**, 359 A.2d 456 (Pa. Super. 1976) (description was of fourteen-year-old

suspect; the appellant was twenty-five years old with a full beard). The mere fact that Appellant did not have one article of clothing described in the flash report that was small, portable, and easily discarded or concealed, did not deprive police of reasonable suspicion to stop and frisk him. ***See***, ***e.g.***, ***Commonwealth v. Vinson***, 522 A.2d 1155, 1157 (Pa. Super. 1987) (stop proper although the appellant and his companion were shorter than the assailant's description, and their jackets were different); ***Commonwealth v. Sheridan***, 437 A.2d 44 (Pa. Super. 1981) (stop was proper even though the defendant wore a different color and type of coat from the description, and he lacked the described hat).

We remind Appellant that we "cannot evaluate the totality of the circumstances through the grudging eyes of hindsight nor in terms of library analysis, but as understood by those versed in the field of law enforcement." ***Commonwealth v. Jackson***, 907 A.2d 540, 543 (Pa. Super. 2006) (quoting ***Commonwealth v. Shelly***, 703 A.2d 499, 503 (Pa. Super. 1997)). The totality of these facts, in the knowledge of Officer Young at the time, was sufficient to establish reasonable suspicion of criminal activity. Thus, we conclude that the detention was lawful, and that the trial court properly held the evidence garnered as a result thereof should not be suppressed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2014