J-S50024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD O'BRYANT | |
| Appellant | No. 1512 EDA 2014 |

Appeal from the Judgment of Sentence April 15, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009641-2013

BEFORE:  PANELLA, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                **FILED AUGUST 26, 2015**

Appellant, Edward O'Bryant, appeals from the April 15, 2014 aggregate judgment of sentence of four to eight years' imprisonment, imposed after he was found guilty of one count each of possession of a firearm prohibited, possession of a firearm with the manufacturer's number altered, firearms not to be carried without a license, and carrying a firearm in public in Philadelphia.[1]  After careful review, we affirm.

The trial court summarized the following factual history of this case, through its findings of fact from its suppression hearing, as follows.

---

[1]  18 Pa.C.S.A. §§ 6105(a)(1), 6110.2(a), 6106(a)(1), and 6108, respectively.

1. On July 9, 201[3], at approximately 7:10 p.m., Officer Burgoon[2] of the Philadelphia Police Department was on a tour of duty on the 5300 block of Sylvester Street in the City of Philadelphia. Officer Burgoon received a radio call for a male with a gun who was being chased by fellow officers on foot.

2. The flash information was for a black male with a white shirt and dark colored pants.

3. Officers Quinn and Baycos arrived on the scene before Officer Burgoon and ended up chasing a male who appeared to fit the above flash.

4. Initially, Officer Burgoon was in an unmarked car and then on foot during this tour of duty. He was originally on his way out to conduct surveillance at 1600 Cheltenham.

5. When he first arrived on the scene in the unmarked car, he saw the fellow officers running down the street chasing somebody. At that time, he switched over to the actual northeast radio band (for the 15th and 2nd District police radio band) and received the detailed flash information.

6. He then pulled the unmarked vehicle over and went out to look for the suspect on foot in the alleyways and on the side streets.

7. The officer did not observe anyone else in the general vicinity who was dressed similarly to [Appellant] or who otherwise matched the above flash description. Meanwhile, he located the suspect ducked down and hiding suspiciously by a parked car near or under a tree. He was ducked down lower than the car frame so as to avoid being seen by the police.

---

[2] Officer Burgoon's first name does not appear in the certified record.

8. The officer saw that the man fit the above flash. He had been crouching down and hiding for quite a while.

9. On the date of the incident, Officer Burgoon had been a member of the force for 11 years and assigned to the 15th district for two years. This is an area known for a lot of robberies and he has personally responded to police calls in the general vicinity anywhere from 50 to 100 times.

10. The area is also known [as] a high drug crime area.

11. The suspect then stood up, again after crouching for some time, and proceeded to walk down the alleyway. Sergeant Cerruti, a fellow officer, was operating a marked car and was coming around the backend of the alleyway at that time. Sergeant Cerruti then stopped [Appellant], at which point Officer Burgoon conducted a frisk.

12. During a protective frisk over the clothes of [Appellant], Officer Burgoon felt a hard metallic object which he immediately recognized as a firearm.

13. He then recovered a revolver from [Appellant]'s rightside waistband. The gun was a blue steel 357 revolver. It was loaded with six live rounds and had a serial number scratched off which was unreadable.

14. It was placed on property receipt number 3107542.

15. [Appellant] did not have a valid license to carry and even told the officer as much on the date in question. The [b]allistics report indicates that the firearm is operable. It had gunshot residue present in all chambers and the serial number was obliterated.

16. Additionally, [Appellant] was not eligible to have a license to carry a firearm in light of prior

convictions which would disqualify him for that purpose.

Trial Court Opinion, 8/11/14, at 2-5.

On August 6, 2013, the Commonwealth filed an information charging Appellant with the above-mentioned offenses. Appellant sought to suppress the firearm.[3] On February 26, 2014, the trial court conducted a suppression hearing, at which Officer Burgoon testified. Appellant did not present any evidence. At the conclusion of said hearing, the trial court denied Appellant's suppression motion. Immediately following the denial of the motion, Appellant proceeded to a stipulated bench trial, at the conclusion of which the trial court found Appellant guilty of all charges. On April 15, 2014, the trial court imposed an aggregate sentence of four to eight years' imprisonment.[4] Appellant did not file a post-sentence motion. On May 15, 2014, Appellant filed a timely notice of appeal.[5]

_____

[3] Neither the certified record nor the trial court's docket contains an entry for a written suppression motion. However, Pennsylvania Rule of Criminal Procedure 575 permits oral motions at the discretion of the trial court. **See generally** Pa.R.Crim.P. 575(A)(1) (stating, "[a]ll motions shall be in writing, except as permitted by the court or when made in open court during a trial or hearing[]"). As all parties and the trial court agree that there was a motion to suppress in this case, we presume that it was an oral motion. **See** N.T., 2/26/14, at 4 (stating the basis for suppression as "the officers did not have reasonable suspicion nor probable cause to stop [Appellant] and conduct a search[]").

[4] Specifically, the trial court sentenced Appellant to four to eight years' imprisonment for each count of possession of a firearm prohibited and possession of a firearm with the manufacturer's number altered. The trial
*(Footnote Continued Next Page)*

- 4 -

On appeal, Appellant raises one issue for our review.

> I. Did the [trial] court err when it found that there was reasonable suspicion of criminal activity to justify a **Terry**[6] stop of [Appellant], which resulted in the recovery of a firearm?

Appellant's Brief at 3.

We begin by noting our well-established standard of review over challenges to the denial of suppression motions.

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

**Commonwealth v. Gary**, 91 A.3d 102, 106 (Pa. 2014) (citation omitted).

In this case, Appellant argues that the police lacked the reasonable suspicion that he was involved in criminal activity, rendering the seizure unconstitutional. Appellant's Brief at 14-17. The Commonwealth counters

_(Footnote Continued)_ ─────────

court imposed a sentence of three-and-one-half to seven years' imprisonment for firearms not to be carried without a license. Finally, the trial court sentenced Appellant to two-and-one-half to five years' imprisonment for carrying a firearm in public in Philadelphia. All sentences were to run concurrently to each other.

[5] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

[6] **Terry v. Ohio**, 392 U.S. 1 (1968).

that because Appellant matched the flash description and intentionally hid from law enforcement in a high crime area, Appellant's constitutional rights were not violated. Commonwealth's Brief at 6.

> The Fourth Amendment of the Federal Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." U.S. Const. amend. IV. Likewise, Article I, Section 8 of the Pennsylvania Constitution states, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures …." Pa. Const. Art. I, § 8. Under Pennsylvania law, there are three levels of encounter that aid courts in conducting search and seizure analyses.
>
> > The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.
>
> *Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa. Super. 2013) (citation omitted), *appeal denied*, 87 A.3d 320 (Pa. 2014).

*Commonwealth v. Carter*, 105 A.3d 765, 768 (Pa. Super. 2014) (*en banc*), *appeal denied*, --- A.3d ---, 641 EAL 2014 (Pa. 2015). In this case, Appellant and the Commonwealth agree that the encounter in question was an investigative detention and therefore the police were required to have

reasonable suspicion that criminal activity was afoot to render the seizure constitutional. Appellant's Brief at 12; Commonwealth's Brief at 7.

> "The Fourth Amendment permits brief investigative stops … when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." **Navarette v. California**, 134 S. Ct. 1683, 1687 (2014). It is axiomatic that to establish reasonable suspicion, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." **United States v. Sokolow**, 490 U.S. 1, 7 (1989) (internal quotation marks and citation omitted). Unlike the other amendments pertaining to criminal proceedings, the Fourth Amendment is unique as it has standards built into its text, *i.e.*, reasonableness and probable cause. **See generally** U.S. Const. amend. IV. However, as the Supreme Court has long recognized, **Terry v. Ohio**, 392 U.S. 1 (1968) is an exception to the textual standard of probable cause. **Florida v. Royer**, 460 U.S. 491, 498 (1983). A suppression court is required to "take[] into account the totality of the circumstances—the whole picture." **Navarette**, **supra** (internal quotation marks and citation omitted). When conducting a **Terry** analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex ante*, whether an objective basis for the seizure was present. **Adams v. Williams**, 407 U.S. 143, 146 (1972).

**Id.** at 768-769 (footnote omitted).[7]

In this case, Officer Burgoon testified that at approximately 7:10 p.m. he was around the 5300 block of Sylvester Street when he heard a radio

_____

[7] Appellant does not challenge the constitutionality of the subsequent frisk of Appellant's person that occurred after the seizure was effectuated.

flash describing a man with a gun. N.T., 2/26/14, at 6. Specifically, the description was "a black male, white tee shirt, [and] dark colored pants." *Id.* at 8. Officer Burgoon saw officers chasing someone down the street on foot as he arrived on the scene, though he could not tell who it was they were chasing. *Id.* at 11-12. Officer Burgoon got out of his car and began to look for the suspect on side streets and alleyways in the vicinity. *Id.* at 11. Officer Burgoon saw Appellant ducked down between a parked car and a tree. *Id.* Specifically, Officer Burgoon observed that Appellant was crouched down lower than the frame of the car. *Id.* He observed that Appellant generally matched the description of the flash, as he was a black male wearing a white t-shirt and blue jeans. *Id.* Officer Burgoon testified that in this particular area there were "a lot of robberies." *Id.* at 13. Furthermore, Officer Burgoon had personally responded to 50 to 100 radio calls from that area, as well as "constant complaints of drug sales[.]" *Id.* at 14. Officer Burgoon approached Appellant, and as he did, Appellant stood up, crossed the street, and walked down an alleyway. *Id.* At the other end of said alleyway, Sergeant Cerutti got out of his own marked police car, saw Appellant and Officer Burgoon behind him and stopped Appellant. *Id.* at 14-15. Officer Burgoon performed a pat-down, resulting in the recovery of the firearm in question from Appellant's waistband. *Id.* at 15.

As noted above, when reviewing the trial court's conclusion that the police had reasonable suspicion of criminal activity, we solely look at the

factors that were present and known to the officer *ex ante*. ***Carter***, ***supra*** at 769. In this case, Officer Burgoon responded to a radio description of a black male wearing a white t-shirt and dark colored pants with a gun. ***Id.*** at 6, 8. Officer Burgoon then observed Appellant, who matched the description of the flash, hiding from police, crouched down behind a parked car. ***Id.*** at 11. This all took place in a high crime area. ***Id.*** at 13.

After careful review, we conclude the seizure was constitutional. This Court has consistently noted that an anonymous tip must be independently corroborated by police before a seizure may be effectuated. ***Commonwealth v. Ranson***, 103 A.3d 73, 78 (Pa. Super. 2014), *appeal denied*, --- A.3d ---, 2015 WL 3938036 (Pa. 2015). Here, Officer Burgoon observed Appellant, who matched the flash description of the suspect, hiding behind the frame of a parked car under a tree, in a high-crime area. In our view, this supplied Officer Burgoon with sufficient corroboration to effectuate the seizure. ***See Carter***, ***supra*** at 774 (concluding seizure was constitutional, in part, because the defendant acted evasively by "walking away from the known drug corner whenever the officer's passed by it[]"); ***Commonwealth v. Walls***, 53 A.3d 889, 894-895 (Pa. Super. 2012) (concluding seizure was constitutional where police observed the defendant matching the flash description of a suspect and where the defendant fled upon observing the police).

Appellant's argument that the seizure in this case was unconstitutional appears to focus on what the police did not observe. Appellant points out that although Appellant was crouched down behind a car, "there was no testimony that Appellant was sweating … [or] was nervous." Appellant's Brief at 14. Appellant also points out that it was not late at night and Officer Burgoon never saw Appellant specifically being chased by the other officers when he arrived on the scene. *Id.* Appellant additionally notes that he did not flee from the police, instead he walked away. *Id.* This line of argument demonstrates Appellant's misunderstanding of *Terry*. As noted above, the constitutional inquiry focuses on the factors that were known to the officer. *Carter*, *supra*. Appellant's argument requires the trial court and this Court to focus, at least in part, on what the officer did **not** know or observe. As made plain by our cases, this mode of analysis would contradict the totality of the circumstances analysis required by the Fourth Amendment. *See generally id.* at 768-769.

We also disagree with Appellant's argument that "[i]f crouching on a residential street is objective reasonable suspicion of criminal activity then any person lighting a cigarette, playing hide and seek on a summer night, play hiding from their children, checking a scratch on their car, or any other reason is subject to a search of their person." Appellant's Brief at 15. As we have explained, it is Appellant's matching the flash description **in addition to** his evasive behavior in a high-crime area that made the seizure

constitutional. Also, as we recently explained in ***Carter***, by requiring only reasonable suspicion to effectuate a seizure like the one in this case, "***Terry***, by its very nature, 'accepts the risk that officers may stop innocent people.'" ***Carter***, ***supra*** at 769 n.4, *quoting* ***Illinois v. Wardlow***, 528 U.S. 119, 126 (2000). Based on all of the aforementioned considerations, we agree with the trial court that Officer Burgoon possessed the required reasonable suspicion sufficient to effectuate his seizure of Appellant. As a result, Appellant's Fourth Amendment rights were not violated, and the trial court correctly denied his motion to suppress. ***See Gary***, ***supra***.

Based on the foregoing, we conclude Appellant's sole issue on appeal is devoid of merit. Accordingly, the trial court's April 15, 2014 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/26/2015</u>

- 11 -