J-S59040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LAMAR BATCHLER, | |
| Appellee | No. 2200 EDA 2015 |

Appeal from the Order of June 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002120-2015

BEFORE:  BENDER, P.J.E., OLSON and FITZGERALD,* JJ.

DISSENTING MEMORANDUM BY OLSON, J.:     **FILED DECEMBER 06, 2016**

As I believe that the totality of the facts and circumstances supports the conclusion that the Commonwealth met its burden of establishing that Officer Daniel Sweeney had reasonable suspicion to conduct a protective frisk of Appellee, I must respectfully dissent.

The learned Majority relies on the trial court's opinion in affirming the order granting Appellee's motion to suppress the firearm that was discovered during a protective search of Appellee following a valid traffic stop.  In my view, however, the factual findings made by the trial court do not support suppression.  Instead, the evidence adduced during the

* Former Justice specially assigned to the Superior Court.

suppression hearing supports the conclusion that the **Terry**[1] frisk was appropriate and, therefore, the firearm seized from Appellee's waistband should not be suppressed.

It is important to note that "in making a reasonable suspicion determination, the United States Supreme Court has rejected courts' isolated evaluation and rejection of individual factors." **Commonwealth v. Walls,** 53 A.3d 889, 894-895 (Pa. Super. 2012), *citing* **U.S. v. Arvizu**, 534 U.S. 266, 274 (2002). Rather than pursuing a "divide-and-conquer analysis", the trial court must employ a totality of the circumstances test. **Walls**, 53 A.3d at 895. Here, I believe that the trial court looked at facts in isolation and, based upon its stand-alone findings, determined that reasonable suspicion was not established. The trial court erred in doing so. Instead, applying the totality of circumstances test, the **Terry** frisk was proper.

The uncontradicted evidence adduced at the suppression hearing established that Appellee was a passenger in the front seat of a vehicle stopped by the police for a Motor Vehicle Code violation. The vehicle was

---

[1] **Terry v. Ohio**, 392 U.S. 1 (1968). It is now well settled that **Terry** allows a protective search for weapons when "specific and articulable facts which, **taken together** with the rational inferences from those facts, reasonably warrant" the officer's belief that the suspect is dangerous and may require immediate control of a weapon. **Id.** at 21 (emphasis added). "The issue is whether a reasonably prudent man would be warranted in the belief that his safety or that of others was in danger." **Id.** at 27.

stopped at approximately 9:35 p.m. on February 10, 2015. Officer Sweeney, one of the officers who stopped the vehicle, testified that the area in which the vehicle was stopped is a high crime area. Officer Sweeney, a 17-year veteran police officer, personally made numerous arrests for narcotic violations and illegal firearms within a three block radius of the location at which the vehicle was stopped. When Officer Sweeney approached the passenger side of the vehicle, he saw Appellee with his arms extended in a Superman pose. Appellee "appeared very nervous, very scared" and Officer Sweeney asked him if he had anything on him because the position in which Appellee was sitting made the veteran officer "a little suspicious". N.T., Suppression Hearing, 6/25/15, at 9. After the two officers obtained documentation from both the driver of the vehicle and Appellee, they returned to the police vehicle. Within a minute or two, the officers returned to the stopped vehicle and again, Officer Sweeney approached the passenger side. At this time, Officer Sweeney saw Appellee "sitting awkwardly like as if he was concealing something from either [Officer Sweeney's] vantage point or [his] partner's vantage point." *Id.* at 11.[2] At this time, Officer Sweeney was concerned that Appellee may have a weapon on him, so the officer ordered Appellee out of the vehicle and frisked

---

[2] Specifically, Officer Sweeney demonstrated that Appellee sat back in the seat and leaned over to the left side console with both hands crossed over the console. N.T., Suppression Hearing, 6/25/15, at 11-12.

him at which time a firearm was found concealed in the left side of Appellee's waistband.[3]   In reviewing the totality of these facts and circumstances, Officer Sweeney possessed a reasonable and articulable suspicion to conduct a **Terry** protective weapons search.   **See Commonwealth v. Buchert**, 68 A.3d 911, 916-917 (Pa. Super. 2013) ("The combination of Appellee's furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and the night time stop, was sufficient to warrant a reasonable police officer to believe that his safety was in danger and that Appellee may gain immediate control of a weapon."), *appeal denied*, 623 Pa. 759 (2014).

In granting suppression, the trial court found that Officer Sweeney never saw a firearm on Appellee or even a bulge.   Trial Court Opinion, 12/2/15, at 4.   However, nothing in the law requires the officer to actually see a firearm or a suspicious bulge to conduct a **Terry** frisk.   In fact, a **Terry** frisk is performed precisely because a police officer is not certain

---

[3] When asked why he believed that Appellee may have had a weapon, Officer Sweeney testified as follows:

> Just in my mind two things with his hands being like extremely like his arms were rock solid.   The best way to explain it probably would be like a [S]uperman type motion. And then -- . . . Then the second time was the way he was sitting the second time as if he was shielding or guarding something.   I've been a police officer for 17 years and I knew something wasn't right.

N.T., Suppression Hearing, 6/25/15, at 12-13.

whether the person possesses a firearm. The trial court also found that Appellee was cooperative, there were no "suspicious" movements observed within the car, and Appellee's "Superman pose" cannot be described as "furtive". *Id.* at 5. Yet, the trial court acknowledged that Appellee was observed in "two, perhaps unnatural, seating positions: the Superman pose and then leaning up against the armrest", and that he was nervous. *Id.* In my view, Appellee's nervousness and assumption of such awkward positions would create reasonable suspicion in a veteran police officer, especially considering all of the other facts surrounding the stop. Finally, the trial court concluded that, although the vehicle was stopped in a high crime area, the vehicle was stopped for a Motor Vehicle Code violation unrelated to the use or possession of a firearm. *Id.* Again, nothing in the law holds that a *Terry* frisk may only be conducted if the person is stopped for a suspected firearms violation. To the contrary, traffic stops pose significant danger to police officers and may give rise to the need for a protective frisk. As the United States Supreme Court noted in *Pennsylvania. v. Mimms*, 434 U.S. 106 (1977):

> [W]e have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. We are aware that not all these assaults occur when issuing traffic summons, but **we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations.** Indeed, it appears that a significant

percentage of murders of police officers occurs when the officers are making traffic stops.

*Id.* at 110 (emphasis added) (internal quotations and citations omitted). Hence, "the heightened risk of danger to police officers during roadside encounters should be contrasted with the lessened expectation of privacy that a citizen possesses with respect to his vehicle". ***In the Interest of O.J.***, 958 A.2d 561, 565 (Pa. Super. 2008) (*en banc*), *appeal denied*, 605 Pa. 688 (2010).

For the foregoing reasons, I believe there was reasonable suspicion to conduct a protective search of Appellee and, therefore, the trial court erred in suppressing the firearm. Thus, I respectfully dissent.